Our last case for today, now this afternoon, is Thompson against Vanihel. We should have Mr. Thompson and Mr. Cobe. Coby, Cobe? We do. So Mr. Thompson, I will allow you to proceed now. I assume no relation. There is not. Good morning. May it please the court. My name is Daniel Thompson, and I represent Petitioner Appellant J.R. Thompson in the Savings Appeal. Mr. Thompson's constitutional right to effective assistance of counsel was violated because the state, during its case in chief, led the jury to believe he was not trustworthy and perhaps even guilty. Mr. Thompson, can I ask you a question? I'm more focused on the admission of the evidence than I am on the closing argument. Because of course, the evidence that your client asked to speak to a lawyer was in evidence at the time of the closing argument, which the prosecutor in this case then referred to. But why was that just not part of the trial strategy? It seems to me that Mr. Dodd objected to the statements that came in after your client said, mom, I think we should get a lawyer. Those statements, though, I don't think harmed your client. I don't think they added much here. But Mr. Dodd did object to those statements. But it seems like he deliberately allowed the evidence or the statement to come in, I would like to talk, mom, I think we need to get a lawyer. And in fact, on your client's cross-examination, on direct examination, he kind of explained why. He was asked on cross-examination, why, after you had consulted with an attorney, did you feel that you should remain silent? Answer, I followed the advice of my attorney. So it seemed to me that what Mr. Dodd was trying to do was allow this evidence in so that your client had an explanation as to why his statement to the police differed so much from his testimony at trial. So it was all part of the trial strategy. And why was that ineffective? Well, Your Honor, during the trial, the trial judge explicitly mentioned how Attorney Dodd had access to that record for six months and still yet did nothing until the day of the trial. And that was part of the reason why the trial judge overruled the objection. And as far as the prejudice goes, Your Honor, this isn't necessarily about the statements. It's about the fact that he asked for an attorney. The real harm here is the fact that the jury has been told by the prosecutor, quote, and this is where the evidence that comes before you is important, end quote, and then emphasizes the fact that Mr. Thompson had asked for an attorney, unlike his co-defendant, Richard Dillon. Yes, but Mr. Dodd explains that. I think when the district judge, the issue in front of the trial judge was with respect to the exclusion of the statements after Mr. Dodd asks for an attorney. The district, the trial court judge and Mr. Dodd were not discussing the statement, mom, I think we need to get an attorney. It seems like everybody wanted that in evidence, including Mr. Dodd. Mr. Dodd explained here on your appendix, page 294, he tells the judge, the defendant consults an attorney, relies on the advice of an attorney. He may not know why the attorney is giving the advice, but he relies on it. And now what he's questioning, what the guy's actions, actions after he consults an attorney. That was referring to what the prosecutor is trying to do. But it seemed to me that what Mr. Dodd was trying to, what he was saying here is, we want that in evidence. We want the, mom, I think we need to get an attorney. So it explains, he goes and then sees an attorney. The attorney tells him, don't say anything to anybody at all until you get up on the witness stand, I guess, during cross-examination. We can question the strategy, but it seems to me that that was the strategy. I guess, was it not the strategy? That's my question. Of course, that's an impossible determination to make in hindsight. Reasonably, that was not part of the trial strategy, because he did try to make that objection in the middle of the trial. And it wasn't necessarily the statements coming afterwards, but the fact that he actually asked for an attorney that prejudiced Mr. Thompson. So going back to the prejudice on the statement. If he did make the objection, I don't think he did, but if he did make the objection, then he wasn't ineffective. Because the judge may have been wrong, but he wasn't ineffective. Of course, so the prejudice here is there are a series of events, right? It's the fact that that evidence was allowed in in the first place, and the fact that it was used multiple times throughout the trial, and then most importantly, where the real prejudice lies is during closing argument, when the prosecutor impeaches Mr. Thompson's alibi testimony. So let me ask you this. I mean, I have sort of the same, or maybe not the same, but the state tries to get this interrogation into evidence. I understand there were oral objections, no pretrial objections, but oral objections. And I feel, personally, that means the lawyer put it before the trial judge and was not ineffective in that respect. I do understand that the closing argument, when the prosecutor is basically saying, you can draw an inference of guilt because Richard Dillon never, because Thompson never tries to explain his actions that night.  He wants a lawyer. What kind of a guy would want a lawyer other than somebody who's guilty? But the fact is, this is just a piece of a fairly lengthy closing argument, as I understand, although I'm not sure that we have the whole thing in the record. And more importantly, we're supposed to evaluate these things at this point in light of the record as a whole. And there was a tremendous amount of evidence in this record pointing to Mr. Thompson's complicity in these murders. Well, Your Honor, I would suggest the opposite. There wasn't as much evidence and as substantial and overwhelming evidence as the state wants to point out. The only two pieces of physical evidence that the state relies on is evidence that overcomes prejudice against Mr. Thompson. We're never even linked to the crime. As for the pathologist's testimony, he never confirmed that a single blood sample collected by the police belonged to the victims. In fact, the faint stain on the pair of jeans was never even confirmed to be the same blood type as the victims. And on top of that, he wasn't certain whether one or two knives were used during the crime. And the state also points to the testimony of Mr. Thompson's co-defendant, Richard Dillon, as part of the evidence that overcomes prejudice against Mr. Thompson. But Dillon said he never saw Mr. Thompson with a knife and admitted that Mr. Thompson didn't commit the murders. Dillon, from the very beginning, admitted to committing the murders with only one knife. The state also points to a witness who saw Richard Dillon near the victim's house as evidence that overcomes prejudice against Mr. Thompson, but that proved nothing other than the fact that Richard Dillon was there, not Mr. Thompson. And the only other witness they point to actually corroborated Mr. Thompson's alibi, which is that he was at home while the murders happened and then went to the laundromat with Dillon later that night where he was identified by the witness. And perhaps most perplexing is the state's continued reliance on Mr. Thompson's alibi as evidence that somehow overcomes prejudice against him. But the state cannot impeach Mr. Thompson's alibi testimony with this invocation at trial and then argue that his weakened alibi is part of the evidence that overcomes prejudice against him in this appeal. The evidence boiled down to a credibility determination. And unfortunately, Mr. Thompson was robbed of his credibility due to the attorney Dodd's shortcomings in not objecting to the state's impermissible impeachment. But back to Judge Kirsch's point, if right or wrong, the evidence does come in, then when the prosecutor makes those two references to it out of an entire closing argument, isn't the harm already done? I mean, it's in. It's not the lawyer's fault that it's in because the lawyer objected. But, Your Honor, the state emphasizes that that's the evidence. And like I said before, they quote, they said, this is the evidence that comes before you that's important. And they went on to... Why wouldn't the lawyer perhaps have had a strategic reason not to object to the closing statement and shine even more light on this line of inquiry, on the request for a lawyer? I mean, closing statements are difficult situations. Your Honor, that's where the ineffective assistance of counsel lies. I'm saying, you know, yes, theoretically, the lawyer standing there when the prosecutor says this could have jumped up and said, we object. But then the jury's like, oh, look at that. You know, they're objecting to this. Couldn't a rational lawyer have decided to just live with it since the jury's already heard this information? Not perhaps, but the fact remains that the state emphasized that fact right at closing argument. I'd like to reserve the rest of my time for rebuttal. That would be fine. Excuse me. Sorry. I just wanted to... I'll give you extra time since we have a judge who has a question. Sorry. No, no, it's all right. In this debate about objecting when the evidence comes in, the use in closing argument, I would have thought the thing that would make the most sense would just be an appellate argument based on Doyle. Of course. And unfortunately, the trial attorney, who was also the same as the appellate attorney, did not raise that claim. In fact, the... Thank you. Thank you. All right. Mr. Cobe. May it please the court. Thompson has failed to show that he was denied the effective assistance of counsel at his trial. While he can't show deficient performance or prejudice from his alleged instances of non-effectiveness, I will start with the prejudice. The evidence... I'm not at all convinced on the performance side. But of course, if you can show no prejudice, then that's enough, too. The evidence overwhelmingly points to Thompson's guilt. Dillon testified that Thompson was involved in the robbery and murders, and his testimony was corroborated by the physical evidence. The scene of the crime where the victims were, the damage to the house, indicated that two people were involved in the crime because the victims here had an alarm system and had a telephone, and he could not have been struggling. One person could not have been struggling with Mr. Hilburn and left Mrs. Hilburn alone and her not be able to either call someone or push the panic button that would have let off the siren. Thompson possessed the two knives that were consistent with the murder weapons. Thompson cleaned and oiled one of them after the murders. Blood that was not Thompson's but consistent with the Hilburn's was found on his glove, in his coat, in his house. Thompson also had blood on his jeans. Dillon was seen near the crime, which corroborates the fact that he was there. Thompson was with Dillon at the laundromat afterwards to wash Dillon's bloody clothes. He was seen with Dillon at his house shortly before the crimes and was seen with Dillon after the crimes. And Thompson and Dillon had money after the crimes to go buy marijuana. Thompson's alibi is not corroborated at all by any of the physical evidence or any evidence in here. And most importantly, he provides no theory as to why his best friend would include him in a crime in a way that does not at all make Dillon's role in the crime less. In fact, Dillon takes responsibility for the murders. It's important to note that the state always proceeded against Thompson here as an accomplice and under a felony murder theory, never claiming that Thompson was the sole actor in the murders. This was two quick references by the prosecutor during closing argument in the middle of a 65-page closing argument, a very lengthy closing argument. Do we have that in the record, Mr. Cobb? We looked in the district court's record. Do we have the full transcript of the closing argument in the state court? I believe the state court record was submitted to the district court. Whether it was transmitted up to the Seventh Circuit, I'm not sure about that in the record. But I believe it was submitted as part of the return by the state. Okay. We'll look further. But you said it runs 65 pages? Correct. And that was the initial opening statement by the prosecutor. And then there's 13 more pages of rebuttal closing by the prosecutor where he does not mention the right to the attorney. The prosecutor's theory here was that Dillon told a consistent story that was corroborated by the evidence, and Thompson told a new story that was not corroborated by the evidence. Those were the consistent theories, the consistent theory that the prosecutor put forward. And defense counsel did have the theory of trying to explain why Thompson would lie to police on the several times he talked to police before being arrested, why he would lie, and then why he would not come forward with that evidence of a different story that he was not involved. And the defense counsel chose, as shown by their closing argument, that to pursue a strategy that they would say that the reason he didn't come forward is on the advice of counsel. So don't blame him for the fact that you're hearing this story for the first time, jury. Blame his counsel. The problem with that that I have is that we're looking at this initial conversation that he's having with the police while his mother is there. The whole point is he doesn't have a lawyer. He's not making these statements with advice of counsel. He's making these statements either because he's not really in custody and the police get to ask him, although they've given him a Miranda warning and they've told him he might be facing the death penalty and they're scaring him. But whatever is happening at the problematic moments is not being done on advice of counsel. So it seems to me, this is a little bit off the point. Well, and I think that that would be an argument about whether a counsel strategy was a good one or not a good one. I mean, counsel is trying to figure out what to do with statements that Mr. Thompson made before he has a lawyer, when he makes this mom, you know, I think we need a lawyer or whatever. He actually says it twice and then they do finally stop asking him questions the second time. But whatever that is, that's not being done on advice of counsel. And then that's, that's what enters into evidence over the objection of the trial lawyer. And that's what's alluded to at the end. So really it's just the lawyer trying to make the best of a very bad thing that we're looking at. But the original error occurs when they just keep talking to him. Correct. But, but Thompson had already lied to police about not, not being in Petersburg and being with Dylan. Not on advice of counsel. He just lied because he lied, right? Right. He lied because he lied and he, and he came forward on direct examination to say that the reason he lied was he was afraid of Dylan. And so that's why he lied. And then he didn't come forward after he had counsel and could be protected from Dylan because, because he was still scared of Dylan. And, and so counsel brought forward that testimony to say, no, the reason they didn't come forward is because he had an attorney now and we told him not to. And so I asked you to follow up on this a little bit. I'm trying to understand what evidence there was that the attorney intent made strategic use of the invocation of the right to counsel before what I will loosely call the Doyle error in admitting evidence at trial. Well, I don't think that there was a Doyle error by admitting his statement. It's not a Doyle error before admitting his earlier statement before the invocation, although, well, actually, okay. I think, yeah, you're right. Until he asks for an attorney that much, that much comes in. So the question is what evidence is there of strategy before the admission over objection of the rest of the statement? I don't believe there was a strategy for that portion because after, after the second invocation of the right to counsel, I don't go after the, after even the first equivocal one, there's nothing said during the statement by Thompson that is at all helpful to the state. That's a no prejudice, right? Right. There's no prejudice. And also no reason after objecting to it to do anything further with it, I guess is it wasn't that the, that the trial attorney had to deal with what happened afterwards. What trial, what the trial attorney had to deal with was how do we explain why Thompson lied to police initially in which he admits on direct examination that he lied to police. The first three times he spoke to them how do we explain that he lied to police when his reason for lying to police was that he was, he was scared that he would be implicated in the crime. And so the, the, the cross examination to that was, well, if you were, after you were implicated in the crime, why didn't you come forward and say, I didn't do anything. And, and in response to that, trial counsel was saying because we told them not to. And that was our reason to the, to give to the jury as to someone who is not involved wouldn't correct their lie. But that seems like a huge problem to me because it's what you're saying translated is because we told him to continue to exercise his right to remain silent. That's what you, that's what the lawyer apparently said. Don't make another statement. Don't try to exonerate yourself. Don't try to do anything. Just keep your mouth shut between now and the trial. And that seems to me more use of silence in a, in an impermissible way. Well, and again, that that is a going back to whether that's good strategy or not good strategy. To advise a person to exercise his fifth amendment, right? No, not whether I see what they were saying. No, you can, you can talk. Everyone is very concerned that he didn't come forward during the period between when he's in custody for this and the trial to correct the original lies that he told the police. And apparently the lawyer said, you know, I'm see, I see that as advice of counsel to maintain your permissible constitutional silence. And that would, and then to take that as evidence of guilt is a problem. Well, I don't think that, that the the trial attorney was attempting to use what he advised him or anybody was trying to use what the, what the trial counsel advised him. The choice here was, and I think the choices with every defendant, the defendant who may have a right to silence claim, he can either open up the door and testify, for example, and give a new story that opens himself up to cross-examination or he cannot testify at all and continue its silence. And, and so you pick, pick your poison. And here trial counsel decided to provide an explanation to the jury rather than just leave it out there unspoken as to what was going on. Okay. I think we'll have to call it there. Anything further, Mr. Thompson? Briefly. So about this trial strategy, we have to remember that the harm here was the simple fact that his invocation was used against him, not necessarily the time between his original statement and his last statement is the fact that he asked for an attorney that was used to impeach any credibility that Mr. Thompson would have had. Thank you. Thank you very much. And I understand you took this case by appointment and the court very much appreciates your efforts. So thank you. And thanks as well, of course, to the state, the court will take the case under advisement.